```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHAKIELA CLARK,                        :    CIVIL ACTION
                                       :    NO. 10-2683
          Plaintiff,                   :
                                       :
     v.                                :
                                       :
EL JEFFRE BLACKFOOT-BEY, et al.,       :
                                       :
          Defendants.                  :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                November 1, 2012

**I.   BACKGROUND**

Plaintiff Shakiela Clark ("Plaintiff") filed this action alleging that the Defendants engaged in a "Foreclosure Rescue Scam." Second Am. Compl. ¶ 1, ECF No. 36. It is alleged that Defendant El Jeffre Blackfoot-Bey ("Bey") is a professional con artist functioning under various employment and corporate guises. Id. ¶ 6. Bey conducts business individually and under the guise of All Family Home Improvement Co. ("AFHI"). Defendant Wilburt James ("James") is Bey's brother. It is alleged that James aids his brother in Bey's foreclosure scam by acting as a straw party investor. Id. ¶¶ 7-8.

Defendants Partners in Charity, Inc. ("PIC") and Restoration America, Inc. ("Restoration") are both corporations. Id. ¶¶ 9-10. PIC is the corporate sponsor of Emerald Vantage

Partners LLC ("Emerald"), a Nevada LLC. Id. ¶¶ 11-12. The President of both PIC and Restoration and signer on the bank accounts for PIC, Restoration, and Emerald is Charles Konkus. Id. ¶ 13. It is alleged that Emerald is an alter ego of PIC and Restoration.[1] Id. ¶ 14. It is alleged that Emerald is used by PIC and Restoration as a remote conduit to fund Bey and James' foreclosure scams by lending the amount of a down payment to the buyer/scammer (in this case James) and then listing the loan as a fictitious second mortgage debt of the seller on the loan transaction's HUD1 settlement statement. Id.

In or around October 2007, Plaintiff needed major repairs to her home which she could not afford. Id. ¶ 21. Plaintiff met with Defendant Bey, and Bey advised Plaintiff that he could obtain a refinancing loan for Plaintiff to pay for her home repairs and back taxes if Plaintiff would agree to stop paying her current loan. Id. ¶ 23. Plaintiff did as Bey said. Id. ¶ 24. Next, Bey advised Plaintiff that she would need to sell her home to an investor, Defendant James, who would then lease the home to Plaintiff. Id. ¶ 25. Plaintiff was told that if she adequately paid her lease payments then she would build

---

[1] On August 31, 2011, the Court dismissed Restoration America, Inc. as a defendant in this case because Plaintiff failed to plead facts indicating that Restoration America, Inc. could satisfy the application of the alter ego theory of piercing the corporate veil. ECF No. 50.

credit and be able to qualify for a refinancing loan which Bey would obtain for Plaintiff. Id. ¶ 26. Soon after these conversations, Plaintiff received foreclosure notices. Id. ¶ 27.

On or about October 17, 2007, closing for the foreclosure rescue sale occurred. Plaintiff executed the documents to sell her home to Defendant James for the sum of $120,000.00. Id. ¶ 31. The HUD1 form from the transaction indicates that part of this money went to a first mortgage loan payoff to Chase, a second mortgage payoff to Emerald, and a third mortgage payoff to AFHI. Id. ¶ 32. Neither prior to nor after the rescue transaction did Plaintiff have a second or third mortgage recorded against her property. Id. ¶ 33. Contrary to the HUD1 form, the $19,200 that was alleged to go to Emerald for a mortgage really went to Restoration and PIC for the $17,575.64 they loaned to James to help make the purchase. Id. ¶¶ 36-37. Thus, Restoration and PIC made a profit. Id. ¶ 37. The $14,108.46 alleged to go to AFHI really went to Bey and James as a disguised "fee." Id. ¶ 39. After the closing, Plaintiff could not reach Bey. Id. ¶ 41.

To purchase the property on the aforesaid date, Defendant James, as Mortgagor, granted a certain mortgage in the original principal amount of $108,000 to Defendant OneWest Bank, FSB d/b/a Indymac Mortgage Services, which was recorded on December 7, 2007. Notice of Removal, Clark v. OneWest Bank, Civ.

3

No. 11-5340, Ex. 1 (Civil Action Compl./Quiet Title ¶ 8)[hereinafter "Quiet Title"].

In or around July 2008, Defendant James falsely sued Plaintiff for non-payment of rent. Second Am. Compl. ¶ 42. After this wrongful eviction by James, Plaintiff realized that a scam was perpetrated upon her to take her home and she was unable otherwise to finance repurchase of her home. Id. ¶ 43. By stipulation signed and ordered by the Court on May 3, 2011, Plaintiff and Defendant James agreed to vacate the Deed executed between Plaintiff and Defendant James, thereby restoring title to the property to Plaintiff. Quiet Title ¶ 12. Based on all of the above facts, Plaintiff requests that the OneWest Bank mortgage be marked satisfied, released, and extinguished of record with respect to the subject property, or, in the alternative, that a new mortgage be entered of record from Plaintiff in favor of OneWest Bank in the amount of any liens existing against the property prior to October 17, 2011. Id. ¶ 13.

Plaintiff brings four claims: (1) Violation of the Credit Repair Organizations Act against Defendant Bey; (2) Fraud/Fraudulent Misrepresentation/Unfair Trade Practices against all Defendants; (3) Conspiracy and Aiding/Abetting against all Defendants; and (4) Claim to Quiet Title against OneWest Bank.

## II. PROCEDURAL HISTORY

Plaintiff submitted her second amended complaint on March 10, 2011. ECF No. 36. The current complaint is against four parties: (1) Bey A/K/A, Individ. & D/B/A All Family Home Improvement Co.; (2) James; (3) PIC; and (4) OneWest Bank. Defendant Bey filed an answer on April 12, 2011. ECF No. 39. Defendants PIC and Restoration filed a motion to dismiss, but only Restoration was dismissed. ECF Nos. 44, 50. Defendant PIC submitted an answer to Plaintiff's second amended complaint on February 6, 2012. ECF No. 71. Defendant James filed an answer on November 17, 2011 and Defendant OneWest Bank filed an answer and counterclaim on September 28, 2011. ECF No. 61; Civ. No. 11-5340 ECF Doc. No. 9.

On October 19, 2011, the above-captioned civil matter was consolidated with Plaintiff's civil action to quiet title against OneWest Bank (Civ. No. 11-5340). Defendant OneWest Bank filed a Motion for Summary Judgment on February 29, 2012, to which Plaintiff responded on March 20, 2012. ECF Nos. 75, 76. Plaintiff also filed a cross motion to amend the complaint to join Fannie Mae as a defendant. ECF No. 76. It is these two motions which are now before the Court.

**III. DISCUSSION**

    A.   <u>Motion for Summary Judgment</u>

Defendant OneWest Bank raises four arguments in its motion for summary judgment: (1) Plaintiff's claims are barred by the doctrine of <u>in pari delicto</u> and principles of equity; (2) Plaintiff's claims are subject to FIRREA's mandatory receivership claims process; (3) Plaintiff's claims are affirmatively barred by 12 U.S.C. § 1283(e); and (4) Plaintiff's claims are barred by holder in due course doctrine. Plaintiff opposes all four arguments. For the purposes of this motion for summary judgment, however, the Court will not address them all as it lacks subject matter jurisdiction.

    1.   <u>Standard of Review</u>

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

Failure to exhaust administrative remedies is an affirmative defense to be pleaded by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). "Affirmative defenses ordinarily are raised in responding to a pleading, Fed. R. Civ. P. 8(c), although courts have held that lack of exhaustion can be asserted in a motion for summary judgment if the plaintiff is not harmed by the delay." Brown v. Deparlos, 12-1217, 2012 WL 2512014 (3d Cir. July 2, 2012) (citing Curtis v. Timberlake, 436 F.3d 709, 711 (7th Cir.2006)).

2.  Analysis

Defendant OneWest Bank contends that Plaintiff's claims are subject to the Financial Institutions Reform,

7

Recovery and Enforcement Act's mandatory receivership claims process and that therefore this Court lacks subject matter jurisdiction. Plaintiff responds, however, that the FIRREA is irrelevant because the James loan never passed to the FDIC. Plaintiff states that the Federal National Mortgage Association ("Fannie Mae") owned the beneficial interest in the loan's note and mortgage. Pl.'s Resp. to Mot. for Summ. J. 11, ECF No. 76. Defendant OneWest Bank purchased only the servicing rights to the disputed IndyMac loan. Id. Plaintiff argues that because Defendant OneWest is not a holder of the Note, or that it at least was not a holder at the time of the FDIC purchase process prior to foreclosure, the FIRREA is inapplicable. Id. 12.

        a.    The Financial Institutions Reform, Recovery and Enforcement Act

The FIRREA regulates the sale and transfer of assets and liabilities of failed banks. "One of the important goals of FIRREA is to enable the receiver [of a failed bank] to efficiently determine creditors' claims and preserve assets of the failed institution without being burdened by complex and costly litigation. FIRREA's claims procedure in section 1821(d) is exclusive. Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in section 1821. Fed. Deposit Ins. Corp. v. Shain, Schaffer & Rafanello, 944 F.2d 129, 132 (3d

Cir. 1991). The Third Circuit has held that the jurisdictional bar set forth in § 1821(d)(13)(d) concerns: (1) payment from the assets of the failed institution; (2) actions for payment from those assets; and (3) actions for a determination of rights with respect to those assets. See Rosa v. Resolution Trust Corp., 938 F.2d 383, 393 (3d Cir. 1991). Consequently, "in order to obtain jurisdiction to bring a claim in federal court, one must exhaust administrative remedies by submitting the claim to the receiver in accordance with the administrative scheme for adjudicating claims detailed in § 1821(d)." Glover v. F.D.I.C., No. 11-3382, 2012 WL 3834666, at *9 (3d Cir. Sept. 5, 2012)(quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B., 28 F.3d 376, 383 (3d Cir. 1994)).

Though the Third Circuit has explicitly held that claims against a receiver are subject to the administrative claims process of the FIRREA, it has not yet spoken on whether claims asserted against a purchasing bank based on the conduct of a failed bank must be exhausted under the FIRREA. The Court now follows the lead of four other Circuits in holding such claims subject to the administrative requirements of the FIRREA. See Benson v. JPMorgan Chase Bank, N.A., 673 F.3d 1207, 1209 (2012); Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1144 (D.C. Cir. 2011); Village of Oakwood v. State Bank & Trust Co., 539 F.3d 373, 386 (6th Cir. 2008); Am. First Fed. Inc. v. Lake

9

Forest Park, Inc., 198 F.3d 1259, 1263 n.3 (11th Cir. 1999).

As the Ninth Circuit has explained, the FIRREA's jurisdictional bar "distinguishes claims on their factual bases rather than on the identity of the defendant. It asks whether claims 'relate to any act of omission' of a failed institution or the FDIC." Benson, 673 F.3d at 1212 (citations omitted). Therefore the claims process mandated by the FIRREA should apply to purchasing banks just as it does to receivers.

      b.    FIRREA's Application to Claims Against Defendant OneWest Bank

In this instance, the parties do not dispute the fact that OneWest Bank obtained servicing rights through the FDIC from IndyMac. The dispute instead turns on whether OneWest, the holder of servicing rights but not the holder of a beneficial interest in the James loan, may be subject to the provisions of the FIRREA. Though a factual dispute remains concerning whether Fannie Mae obtained the mortgage at the same time it obtained the promissory note, it is unnecessary to reach this issue, because regardless, the Court presently lacks jurisdiction.[2]

---

[2] Plaintiff raises arguments tangential to the issue of this Court's jurisdiction. Plaintiff states that OneWest only obtained the loan note for the purpose of foreclosure after the FDIC asset transfer. Pl.'s Resp. to Mot. for Summ. J. 12. Plaintiff further contests the validity of the note and OneWest's status as a holder for the purposes of foreclosure. Id. These issues all relate back to factual disputes concerning the transactions which occurred between IndyMac and various parties prior to the bank's failure: whether the note alone

Underlying Plaintiff's quiet title action are the transactions which took place between Defendant James and IndyMac and between Fannie Mae and IndyMac. Defendant OneWest only obtained an interest in the disputed property after the FDIC became receiver for IndyMac. Mot. for Summ. J. 2. In seeking to quiet title on her property, Plaintiff's allegations do not relate to any actions taken by Defendant OneWest. As such, Plaintiff's claims are subject to the FIRREA's mandatory receivership claims process. Until Plaintiff has exhausted this existing administrative remedy, the Court lacks subject matter jurisdiction over her claim.

    B.    <u>Motion to Add Federal National Mortgage Association as a Defendant</u>

Plaintiff seeks to amend her complaint in order to name Fannie Mae as an additional defendant in her quiet title action. Defendant argues that the request is untimely, improper, and futile.

    1.    <u>Legal Standard: Federal Rules of Civil Procedure, Rs. 15, 16</u>

Amendments to pleadings are governed by Rules 15 and 16 of the Federal Rules of Civil Procedure. Rule 15 permits parties to amend their pleadings only once as a matter of

---

passed to Fannie Mae, or the mortgage did as well; whether IndyMac conducted due diligence in underwriting the loan, etc. Before factual determinations can be made regarding what happened after IndyMac's assets were transferred to OneWest, these antecedent issues must be resolved.

course, within 21 days after service of the initial complaint or the filing of a responsive pleading/motion. Fed. R. Civ. Pro. R. 15(a)(1). All further amendments require the leave of the court which it should "freely give… when justice so requires." Id. R. 15(a)(2). If, however, a motion to amend is filed after the Court ordered deadline for amendments has passed, the moving party must first demonstrate good cause for failing to comply with the scheduling order. Id. R. 16(b)(4). "Because the party's request now implicates the effective administration of justice, the party must show good cause in order to procure the court's consent." Price v. Trans Union, L.L.C., 737 F. Supp. 2d 276, 279 (E.D. Pa. 2010) (Robreno, J.). "Good cause" under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order. See Fed. R. Civ. P. 16, Advisory Committee Note (1983) (stating that "the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension").

Once good cause is shown, a court may determine whether justice requires the amendment under Rule 15. See Chancellor v. Pottsgrove School Dist., 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007) (Robreno, J.)(denying motion to amend for lack of good cause but stating that had good cause been demonstrated, the next inquiry would be under Rule 15(a)); see also E. Minerals & Chem. Co. v. Mahan, 225 F.3d 330, 340 (3d Cir. 2000)

12

(holding that 16(b) inquiry is followed by 15(a) inquiry, though not reaching the 15(a) issue because district court's decision to deny motion to amend for lack of good cause was affirmed). A district court has discretion to deny such a request, "if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2003). "In determining whether a claim would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Federal Rule of Civil Procedure 12(b)(6)." Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010) (internal citations and quotations omitted).

 2. Analysis

First the Court makes the determination of whether Plaintiff has good cause for failure to bring her amendment in a timely fashion. It appears that Plaintiff, through the discovery process, has made the determination that the public, through the conservatorship of Fannie Mae, owns this loan and that therefore Fannie Mae should be made a party to this action. Plaintiff bases Fannie Mae's involvement, in part, based on the deposition testimony of Rebecca Marks, a manager of OneWest, which was taken on February 1, 2012. Pl.'s Resp. to Mot. for Summ. J. and

13

Mot. to Am. Compl. 16, ECF No. 76. Plaintiff filed her motion to amend the complaint on March 20, 2012. Given the complexity of the discovery process in this case, and the difficulty in making determinations of ownership of various loan assets, Plaintiff had good cause for the delay in amending her complaint.

Therefore, the Court now has discretion to determine whether justice requires granting Plaintiff leave to amend. Defendant OneWest Bank argues that Plaintiff's amendment would be futile. Defendant avers that because OneWest is the holder of the mortgage against Plaintiff's property, and Fannie Mae is merely the holder of the Note, an action for quiet title would not affect Defendant James's repayment obligation under the Note. Def.'s Reply 14, ECF No. 77. Because the Third Circuit has held that in determining the futility of a claim, the Court should use the same standard applied to Rule 12(b)(6) motions, the facts should be read in the light most favorable to Plaintiff. See Travelers Indem. Co., 594 F.3d at 243; DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3d Cir. 2007). Plaintiff contends that the assignment of the James loan note to OneWest bank failed as a matter of law, and that Fannie Mae holds both the note and the mortgage. Pl.'s Resp. to Mot. for Summ. J. 13-15. If Fannie Mae is indeed the holder of these assets, it would be a necessary party to Plaintiff's quiet title action. Therefore Plaintiff's amendment would not be

futile. As such, the Court will allow Plaintiff to amend her complaint to add Fannie Mae as a defendant.

**IV.  CONCLUSION**

For the foregoing reasons, the Court will grant Defendant OneWest Bank's Motion for Summary Judgment and Plaintiff's Motion to Amend the Complaint. Once Plaintiff files an amended complaint, a status and scheduling conference will be scheduled to set forth a new scheduling order. An appropriate order will follow.